UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>SOUTHPORT BANK,<br><br>        Defendant. | Case No. 13-CV-1086-JPS<br><br>CONSENT ORDER |

I.  INTRODUCTION

  This Consent Order (Order) is submitted jointly by the parties for the approval of and entry by the Court simultaneously with the filing of the United States' Complaint in this action. This Order resolves the claims of the United States that Southport Bank ("Southport" or "the bank") has engaged in a pattern or practice of lending discrimination in violation of the Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3619, and the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691-1691f, by allowing its wholesale mortgage brokers to charge African-American and Hispanic borrowers higher broker fees for residential real estate-related loans than non-Hispanic white ("white") borrowers.

  There has been no factual finding or adjudication with respect to any matter alleged by the United States. Southport denies the United States' allegations that it violated the FHA or ECOA and maintains that it conducted its lending in compliance with the fair lending laws. Accordingly, the execution of this Order is not, and is not to be considered as, an admission or finding of any violation of the FHA or ECOA by the bank. Rather, the parties have entered into this agreed Order to resolve voluntarily the claims asserted

by the United States in order to avoid the risks, burdens, and cost of litigation. The parties agree that full implementation of the terms of this Order shall provide a resolution of the allegations of the United States in a manner consistent with Southport's legitimate business interests.

II.     BACKGROUND

Southport is headquartered in the City of Kenosha, Wisconsin. In 2007 and 2008, 96% of SPB's home mortgage loans were made to borrowers in two Metropolitan Statistical Areas (MSAs), Chicago-Naperville-Joliet and Milwaukee-Waukesha. The bank has two branches in Kenosha and a third in the Kenosha suburb of Salem.

Southport is subject to the supervision of the Federal Deposit Insurance Corporation ("FDIC"). As part of the FDIC's July 20, 2009 Compliance Examination, the agency found reason to believe that the bank engaged in pattern or practice violations of the FHA and ECOA by originating mortgage loans where the compensation received by the brokers was significantly higher for African-American or Hispanic borrowers than non-Hispanic white borrowers with regard to the conventional, first-lien, owner-occupied home purchase loans secured by 1-4 family dwellings the Bank originated through its wholesale mortgage lending division, ComCor Mortgage Company ("ComCor"), in 2007 and 2008. On May 21, 2012, the FDIC referred the lending practices of Southport to the United States Department of Justice pursuant to 15 U.S.C. § 1691e(g).

Based on its own investigation, the United States contends that between 2007 and 2008,[1] Southport charged hundreds of African-American and Hispanic wholesale borrowers higher fees on both purchase and refinance home mortgage loans[2] than white borrowers not based on their creditworthiness or other objective criteria related to borrower risk, but because of their race or national origin.  The Complaint alleges that it was Southport's business practice to allow its mortgage brokers who generated loan applications for the bank to vary their fees and thus alter the price set based on a borrower's objective credit-related factors.  The United States contends that this subjective and unguided pricing discretion resulted in African-American and Hispanic borrowers paying more not based on borrower risk than white borrowers for home mortgage loans.  The Complaint alleges that as a result of the bank's discriminatory practices, an African-American or Hispanic borrower paid, on average, thousands of dollars more for a Southport loan.

III.   REMEDIAL ORDER

1.   Unless otherwise stated herein, the remedial provisions of this Order shall be implemented within ninety (90) days of the Effective Date of

---

[1] In September 2008, Southport began to wind down its wholesale mortgage lending activities and after November of that year made virtually no new wholesale home mortgage loans. On December 31, 2008, the bank closed ComCor. The bank does not currently originate wholesale mortgage loans and has no intention to reenter this line of business.

[2] For purposes of this proposed Consent Order, and consistent with the Home Mortgage Disclosure Act ("HMDA"), the term "home mortgage loan" or "home loan" refers to loans originated for the purchase or refinance of owner-occupied, one-to-four family dwellings.

this Order and shall continue throughout its term. The Effective Date of this Order shall be the date on which it is approved and entered by the Court.

2. Southport, including all of its officers, employees, agents, representatives, assignees, and all those in active concert or participation with any of them, is hereby enjoined from engaging in any act or practice that discriminates on the basis of race or national origin in any aspect of a residential real estate-related transaction in violation of the FHA, or in any aspect of a credit transaction in violation of ECOA. This prohibition includes, but is not limited to: the adoption, performance, or implementation of any policy, practice, or act that results in race or national origin discrimination against residential mortgagors.

3. Southport represents that it no longer originates wholesale residential mortgage loans. In the event that the bank decides to resume the origination of wholesale residential mortgage loans, it shall notify the United States at the earlier of sixty (60) days before it intends to reenter this line of business or the time that it notifies its federal regulator. Southport shall also implement policies, practices, and monitoring designed to prevent and detect potential fair lending violations in its origination of residential loans, and shall provide the United States with the details of these policies, practices, and monitoring forty-five (45) days prior to implementing such reentry. The United States shall have thirty (30) days to review and agree or object to the proposed policies. The parties shall utilize the dispute resolution procedures set forth in Paragraph 18 to resolve any objections by the United States.

4. Southport shall deposit in an interest-bearing escrow account the total sum of $687,000 to compensate for monetary damages that affected persons may have suffered as a result of the alleged violations of the FHA

Page 4 of 11

Case 2:13-cv-01086-JPS    Filed 10/11/13    Page 4 of 12    Document 3

and ECOA with respect to residential mortgage loans (the "Settlement Fund"). Title to this account shall be in the name of "Southport Bank for the benefit of affected persons pursuant to Order of the Court in Civil Action No. 13-CV-1086." Southport shall provide written verification of the deposit to the United States within five (5) days of the Effective Date of this Order. Any interest that accrues shall become part of the Settlement Fund and be utilized and disposed of as set forth herein.

5. Within thirty (30) days of the Effective Date of this Order, the United States shall request any information it believes shall assist in identifying affected persons and determining any damages. Southport shall, within thirty (30) days of receipt of such request, use its reasonable, best efforts to supply, to the extent that it is within the bank's control, such information as requested. Requested data may be supplied as a supplement to the database already provided to the United States by the bank in the course of the United States' inquiry. To the extent that the information is not within Southport's control, the bank shall, within thirty (30) days of receipt of such request, supply any data in its control that identifies other parties that may have the information.

6. The United States shall, upon reasonable notice, be allowed access to the bank's records and files to verify the accuracy of the data provided and to otherwise identify persons entitled to the payments from the Settlement Fund.

7. Within ninety (90) days of the Effective Date of this Order, the United States shall provide to Southport a list of affected persons and an amount each individual shall receive from the Settlement Fund to compensate for monetary damages these persons may have suffered, subject

to the conditions set forth in Paragraph 8. The bank shall have sixty (60) days from receipt of such list in which to review the list and the United States shall consider in good faith any issues raised by the bank.

8. Payments from the Settlement Fund to affected persons shall be subject to the following conditions:

(a) No affected person shall be paid any amount from the Settlement Fund until he or she has executed and delivered to Southport a written release, as set forth in Appendix A, of all claims, legal or equitable, that he or she might have against the released persons and entities regarding the claims asserted by the United States in this lawsuit, so long as such claims accrued prior to the entry of this Order; and

(b) The total amount paid by Southport collectively to the affected persons shall not exceed the amount of the Settlement Fund, including accrued interest.

9. Southport shall, at the expiration of the latter of sixty (60) days after receiving the compensation list referred to in Paragraph 7 or thirty (30) days after resolving any issues raised with the United States pursuant to Paragraph 7, notify each identified person eligible for compensation by a letter (using its reasonable best efforts to locate each person). The form of this letter shall be subject to the review and approval of the United States. At a minimum, the letter shall state that the identified person is eligible for compensation in the indicated amount provided he or she executes and returns to the bank a copy of the agreed-upon release, which release shall be enclosed with the notice along with an addressed and postage-paid return envelope. Each letter shall identify the loan(s) the bank originated to the identified person. Any letters that are returned with a forwarding address

shall promptly be re-sent to that new address. Southport shall provide an accounting of these notifications, indicating the name and address to which each was dispatched, within the sixty (60) day period referred to in this paragraph.

10. Southport shall issue checks in the amount indicated on the compensation list to all identified persons who execute and return the releases. Southport shall issue and mail such checks no later than twenty-one (21) days after the receipt of the release. Southport shall set forth reasonable deadlines for requirements of return of releases, and for the timely deposit of checks, subject to approval of the United States, so that the compensation is distributed and checks are presented for payment or become void prior to the date that is one year from the date the initial notifications are sent. For the twelve (12) month period after the initial notifications are sent to affected persons pursuant to Paragraph 9, Southport shall provide the United States with a quarterly accounting of releases received, checks sent, and notifications for which no response has been received or that were reported to be undeliverable. The United States may make its own efforts to locate affected persons.

11. All money not distributed to allegedly affected persons from the Settlement Fund, including accrued interest, within one year of the date the initial notifications are sent to persons deemed to be affected by the United States shall be distributed to one or more organizations that provide services including credit and housing counseling (including assistance in obtaining loan modification and preventing foreclosure), legal representation of borrowers seeking to obtain a loan modification or to prevent foreclosure, financial literacy, and other related educational programs targeted at

African-American and Hispanic potential and former borrowers in the communities where Southport's branches are located or in MSAs where Southport presently or formerly operated. Recipient(s) of such funds must not be related to Southport, its parent, or any entity owned by the bank. Before selecting the qualified organization(s), Southport shall obtain a proposal from the organization(s) on how the funds will be used consistent with the above-stated purpose, submit such proposal to the United States, and consult with and obtain the non-objection of the United States. The United States and Southport may request modification of the proposal before approving the organization(s).

12. The parties shall obtain the Court's approval for the organizations to receive funds and the amount to be distributed to each prior to distribution provided by Paragraph 11. The parties shall provide the Court with information regarding how the proposed organizations meet the requirements set forth in Paragraph 11. Southport shall require each recipient to submit to the Court, the bank, and the United States a report detailing that funds are utilized for the purposes identified in Paragraph 11 within one year after the funds are distributed, and every year thereafter until the funds are exhausted. For any recipient that does not provide such a report, the bank shall require that the funds be returned to it for redistribution to other organization(s) approved to receive funds.

13. Southport shall not be entitled a set-off, or any other reduction, of the amount of payments to affected persons because of any debts owed by the identified persons. The bank also shall not refuse to make a payment based on a release of legal claims or loan modification previously signed by any affected persons.

## IV. EVALUATING AND MONITORING COMPLIANCE

14. For the duration of this Order, Southport shall retain all records relating to its obligations hereunder as well as its compliance activities as set forth herein. The United States shall have the right to review and copy such records upon request.

15. Within six months of the effective date of this Order, Southport shall submit a report to the United States on the bank's progress in establishing and implementing each of the remedial items specified in this Order. A second report shall be filed on the first anniversary of this Order. Thereafter, Southport shall submit a report on each subsequent anniversary of the date of the Order for the term of the Order describing the actions taken in compliance with the provisions of the Order. The report shall include an objective assessment of the extent to which each quantifiable obligation was met, an explanation of why any particular component fell short of meeting the goal for that year, and any recommendations for additional actions to achieve the goals of this Order.

## V. ADMINISTRATION

16. The Order shall terminate (a) three (3) months after the submission of Southport's third annual report to the United States. Notwithstanding the above, this Order may be extended upon further motion of the United States to the Court, for good cause shown.

17. Any time limits for performance fixed by this Order may be extended by mutual written agreement of the parties. Additionally, details related to administration of the Settlement Fund as set forth in Paragraphs 9-10 can be modified by mutual written agreement of the parties. Other modifications to this Order may be made only upon approval of the Court,

by motion by either party. The parties recognize that there may be changes in relevant and material factual circumstances during the term of this Order that may impact the accomplishment of its goals. The parties agree to work cooperatively to discuss and attempt to agree upon any proposed modifications to this Order resulting therefrom.

18. In the event that any disputes arise about the interpretation of or compliance with the terms of this Order, the parties shall endeavor in good faith to resolve any such dispute between themselves before bringing it to this Court for resolution. The parties agree that if it either reasonably believes that the other party failed to comply with any obligation under this Order, it shall provide written notice thereof and allow a period of at least thirty (30) days to discuss a voluntarily resolution of the alleged violation before presenting the matter to this Court. In the event of either a failure by the bank to perform in a timely manner any act required by this Order or an act by Southport, in violation of any provision hereof, the United States may move this Court to impose any remedy authorized by law or equity, including attorneys' fees and costs.

19. The parties agree that, as of the date of the entry of this Consent Order, litigation is not "reasonably foreseeable" concerning the matters described above. To the extent that either party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, the party is no longer required to maintain such litigation hold. Nothing in this paragraph relieves either party of any other obligations imposed by this Order.

20. Nothing in this Order shall excuse the bank's compliance with any currently or subsequently effective provision of law or order of a

regulator with authority over Southport that imposes additional obligations on the bank.

21. Southport's compliance with the terms of this Order shall fully and finally resolve all claims of the United States relating to the alleged violation of the fair lending laws by means of discriminating on the basis of race and national origin, as alleged in the Complaint in this action, including all claims for equitable relief and monetary damages and penalties. Each party to this Consent Order shall bear its own costs and attorney's fees associated with this litigation.

22. The Order does not create any third-party beneficiaries.

23. The Court shall retain jurisdiction for the duration of this Consent Order to enforce the terms of the Order, after which time the case shall be dismissed with prejudice.

SO ORDERED.

Dated at Milwaukee, Wisconsin, this 11th day of October, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

# APPENDIX A

## RELEASE

In consideration for the parties' agreement to the terms of the Consent Order entered in United States v. Southport Bank (E.D. Wis.), and the payment to me of $_____, pursuant to the Consent Order and effective upon that payment, I hereby release and forever discharge all claims, rights, remedies, and recoveries related to the facts of credit discrimination in the origination of wholesale mortgage loans at issue in the matter referenced above, and release and forever discharge all claims, rights, remedies, and recoveries arising from credit discrimination alleged in that matter in connection with the origination, pricing, terms, and conditions of my loan(s), known and unknown, up to and including the date of execution of this release.

I understand that this releases those claims, rights, remedies and recoveries against Southport Bank, and against any and all related entities, parents, predecessors, successors, subsidiaries, and affiliates, and against any and all of their past and present directors, officers, agents, managers, supervisors, shareholders, and employees and their heirs, executors, administrators, successors in interest, or assigns.

Executed this _____ day of _____, _____.

_____
Signature

_____
Print Name

_____
Address